IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| WILLIE JAMES ASBURY, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3:09-2557-DCN -JRM |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| ROBERT M. STEVENSON, III, | ) | |
| Warden Broad River Correctional | ) | |
| Institution, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Willie James Asbury ("Asbury"), is an inmate at the South Carolina Department

of Corrections serving a sentence of life imprisonment for murder and kidnapping. Asbury filed a

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 which was received by the Court on

October 2, 2009. Respondent filed a return and motion for summary judgment on February 19, 2010.

Because Asbury is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th

Cir. 1975) was issued on February 22, 2010 advising him of his responsibility to respond to the

motion for summary judgment. Asbury filed his response to the motion on March 23, 2010.

## Background and Procedural History

Asbury was charged with murder, kidnapping, armed robbery and burglary[1] in York County in 1992. The first trial in August of 1993 ended in a mistrial. Asbury was found guilty at his second trial in September of 1993. He was represented by Gerald Smith, Esquire, and Harry Dest, Esquire. The conviction was affirmed by the South Carolina Supreme Court on direct appeal. State v. Asbury, 328 S.C. 187, 493 S.E.2d 349 (1997) (Toal, Associate Justice and Finney, Chief Justice dissenting). The majority summarized the facts from trial as follows:

> On January 1, 1992, Ezell Lawrence was found dead in his home. His feet were bound and his hands were tied behind his back with electrical cord. A shirt was tied around his neck and part of the shirt was forced into his mouth. The cause of death was asphyxiation. Asbury's fingerprints were found on the back-porch light bulb of Mr. Lawrence's residence. The bulb had been unscrewed sufficiently so that it was inoperable. The switch for the light was inside the residence. Asbury resided near Mr. Lawrence and often visited at a residence adjacent to Mr. Lawrence's property.

> On January 6, 1992, just after daybreak, deputy sheriffs of the York County Sheriff's Department went to Asbury's residence to serve him with commitment orders and arrest warrants unrelated to Mr. Lawrence's death. Numerous previous attempts to effect service of the warrants had been unsuccessful. In preparing for the arrest, the officers verified Asbury's address through driver's license records, the postal carrier and neighbors. Additionally, they learned from neighbors that Asbury came home late at night and left early in the morning. Testimony reveals the officers, with the arrest warrants and commitments in their possession, knocked on the door of Asbury's residence, announced themselves as police officers and called Asbury's name. A light was seen inside, but no activity was noticed, and they received no response from within. The officers entered Asbury's residence through an open kitchen window.

> Asbury was not at home. However, in searching for him, the officers observed in plain view an electric blanket with a male plug but from which the electrical cord had been removed. The officers left the residence without removing any evidence. On January 8th the officers procured a search warrant, returned to Asbury's residence and seized the electric blanket. Another search warrant was secured on January 15th. Pursuant to this search warrant, numerous appliances from which electrical cords had been severed, partial electrical cords, and items which could be used to cut electrical

---

[1]Directed verdict was granted on the armed robbery and burglary charges.

cords, including several pairs of scissors, were seized from Asbury's residence.

The State's expert witness testified the male plug on the electric blanket had at one time been attached to the female plug on the electrical cord found tied around the victim's ankles. He further testified the electrical cords which bound the victim's hands and ankles had been cut by a pair of scissors found in Asbury's home.

The issues raised on appeal were:

    I.      Did the trial court err in refusing to suppress evidence seized from Asbury's home?

    II.     Did the trial court err by overruling Asbury's motion to exclude reference to severed electrical cords and appliances which had been found in his home but which were not related to the crimes for which he was charged?

    III.    Did the trial court err by denying Asbury's motion for a directed verdict?

    IV.    Did the trial court err by denying Asbury's motion for a continuance?

The Remittitur was returned on December 4, 1997.

While his direct appeal was pending, Asbury filed a petition for writ of habeas corpus in this Court. *See* Sa'id Abdullah Al' Rashid, #200788, a/k/a Willie J. Asbury v. Bessinger, C/A No. 3:97-1423-19BC. Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970) (This Court may take judicial notice of its own records.). The case was dismissed without prejudice on November 18, 1997, to allow Asbury to exhaust his state remedies.

Asbury filed an application for post-conviction relief ("PCR") on April 3, 1998. (App. 554). An evidentiary hearing was held on March 29, 1999. (App. 578). Asbury was represented by B. Allen Bullard, Jr., Esquire. Asbury, his trial attorneys, and James Whistine testified. The PCR court issued an order of dismissal denying the PCR on February 23, 2000. (App. 658).

Mr. Bullard filed a petition for writ of certiorari, asserting that trial counsel was ineffective for declining to accept the trial court's offer to charge "mere presence," and moved to be relieved

pursuant to <u>Johnson v. State</u>, 294 S.C. 310, 364 S.E.2d 201 (1988). Pursuant to state procedure, Asbury filed a *pro se* brief[2] raising seven issues. On December 4, 2001, the South Carolina Supreme Court dismissed the petition for writ of certiorari pursuant to state procedural rules because the petition for writ of certiorari and appendix were not served. The Remittitur was returned on December 20, 2001.

Asbury then filed a second PCR seeking a belated appeal of his first PCR pursuant to <u>Austin v. State</u>, 305 S.C. 453, 409 SE.E.2d 395 (1991). The State consented to the appeal and it was granted on March 3, 2004. Michael L. Brown, Jr., Esquire was appointed to represent Asbury. Mr. Brown filed a petition for writ of certiorari raising the following issues:

    I.       Whether the lower court erred in concluding that counsel rendered effective assistance when he failed to accept the trial court's offer to charge the jury on mere presence?

    II.     Whether the lower court erred in concluding counsel rendered effective assistance when he failed to proffer the testimony concerning Officer Sadler's affair with the Defendant's wife?

    III.    Whether the lower court erred in concluding counsel rendered effective assistance when he failed to call the Defendant's half-brother as a witness to cooberate(sic) his defense?

By order dated August 22, 2006, the South Carolina Supreme Court transferred the matter to the Court of Appeals. On September 20, 2007, the petition for writ of certiorari was denied. Asbury did not seek further review by the South Carolina Supreme Court. The Remittitur was returned on October 9, 2007.

---

[2]The *pro se* brief was captioned "Petition for Writ of Certiorari."

## Grounds for Relief

Asbury does not state his grounds for relief in the body of his petition. They are contained within a lengthy memorandum attached to the petition. Respondent has summarized the grounds, omitting portions of the "Supporting Facts" and "Prejudice" sections of Asbury's statement of his grounds. Respondent has attempted to state a concise statement of each ground. Asbury does not appear to object to this effort. So stated, the grounds are:

Ground one: It is Petitioner's claim that South Carolina Supreme Court denied him his Fourth Amendment right under the United States Constitution in its ruling upholding trial court's refusal to suppress evidence seized from his home where police made a no-knock unannance (sic) force entry into his home with arrest warrants when he was not there, and police had no reasonable belief he was within his home when they entered.

Supporting Facts: Petitioner's constitutional guaranteed right to be free from unreasonable search and seizures was "clearly establish" at the time of his state court conviction became final, ... and he is entitled to habeas corpus relief because the lower court's ruling on this issue rendered a decision that was "contrary to, or involved an unreasonable application of that established law".... ...The court erred in its analysis of the facts and evidence (in the record) it relied on in reaching its conclusion that police had reason to believe that Petitioner was within his home when they entered.

Ground two: It is Petitioner's claim that trial judge denied him his Sixth and Fourteenth Amendment rights to exclude prejudicial evidence of other electrical cords found inside petitioner's home, which only had the tendency to cause the jury to speculate about other criminal wrongdoing for which no evidence had been presented.

Supporting facts: Petitioner submits that evidence of other cords should have been excluded, its probative value being substantially outweighed by unfair prejudice. The prejudicial impact of the court admission of prejudicial evidence must be reviewed against the weight of the trial evidence in its entirety. ....Petitioner submits that the admission of illegal evidence of similar crimes combine with the admission of the prejudicial evidence of "other cut cords from Petitioner's home" only allow trial jury to draw a mandatory presumption (without proper jury instructions), and without the court first ruling on the admissibility of the evidence included in the affidavit and incident report of similar crimes.... Petitioner submits that to allow trial jury to

speculate on such presumption was contrary to, and was an unreasonable application of clearly established United States Supreme Court decision in <u>Francis v. Franklin</u>, 105 S.Ct. At 1965 (1985).

Ground three: It is Petitioner's claim that by allowing trial jury to consider the evidence under the facts of this case, the trial judge denied Petitioner his Fourteenth Amendment right under the due process clause which protected him against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime which he was charged with.

Supporting facts: ...Petitioner submits that the state prosecutor's failure to present evidence sufficient to prove the essential elements (malice aforethought) of the crimes of which Petitioner was charged (murder/kidnapping), and the failure to present evidence sufficient to prove beyond a reasonable doubt each fact of the permissive reference the State relied upon to prove the elements of kidnapping (which was used to establish element of malice for murder), resulted in Petitioner's unconstitutional conviction.

Ground four: It is Petitioner's claim that trial judge refusal to grant continuance denied him his Sixth and Fourteenth amendment rights to cross-examination and impeachment of prosecutor witnesses regarding discrepancy between witnesses trial testimony and testimony given at first trial.

Supporting facts; ...Petitioner submits that trial judge's refusal to grant continuance to obtain transcript of first trial impaired and interfered with defense counsel's ability to develop the material facts of defense issues, to develop proper defenses and to make independent decision about how to manage the defense. ...Further, it is Petitioner's claim that trial judge's failure to grant a continuance impaired defense counsel's ability to develop the material facts of Petitioner's alibi defense, and from preparing and presenting at trial the required evidential support for Petitioner's alibi defense. Petitioner submits that if not for trial judge failure to grant continuance, Petitioner's alibi witness would have been at trial, and there is a possibility that the result of his trial would have been different.

Ground four A: It is Petitioner's claim that he was denied a fair trial and is presently being denied his right to an appeal.

Supporting facts: It is Petitioner's claim that because of his religious denomination (Islam), instead of acting as an advocate on behalf of Petitioner, trial counsel Gerald Smith conspired with State officials to ensure Petitioner's conviction. Petitioner submits that trial counsel's motive and intent was revealed and became apparent early during pre-

trial proceeding.... Petitioner first thought that trial counsel was preparing to challenge the state evidence against him, but was told by trial counsel that the hearing was related to the "similar crimes" mentioned in ground two, and that a hearing related to the murder charge would be held later, which never happen. ...Further, Petitioner submits that after his conviction, and similarly, because of his Islamic belief his appeals (direct and post-conviction), have continued to be delayed, impeded and denied by trial counsel, court officials (S.C. Supreme Court and S.C. Court of Appeals) and various appellate counsel.

Ground four B: It is Petitioner's claim that he have and continues to be denied his right to an appeal guaranteed by the Sixth Amendment of the United States Constitution, in violation of the Due Process Clause of the United States Constitution by the deliberate and unnecessary delay by state court officials in adjudicating the merits of his post conviction claims.

Supporting facts: It is Petitioner's claim that the eleven plus years delay it has taken to adjudicate his post conviction relief claims by state court officials have been/is motivated by post 9-11 anti-Islamic bias and sentiments, and is employed to gain tactical advantage over Petitioner's appeal and claims. Petitioner submits that the inordinate delay of his appeal has impaired his ability to present effective claims and argument to the courts, which have impeded and denied him liberty to have unimpaired access to the courts. Petitioner submits that his defense and appeal have been prejudiced and have suffered irreversible injury and harm by the eleven plus years delay it have taken to adjudicate the merits of his post conviction claims.

Ground five:   It is Petitioner's claim that trial court's refusal to allow questioning into the affair and sustained relationship between Petitioner and wife of investigator Frankie Sadler and the testimony of Investigator Frankie Sadler concerning the affair denied Petitioner his Sixth Amendment right to confront his accuser and his Sixth Amendment right to present his theory of defense to the court and jury.

Supporting facts. Petitioner submits that during trial he had a constitutional right to pursue questioning of investigator Frankie Sadler to elicit relevant testimony of bias, which would have proved Petitioner's defense theory that charges against him were the result of a vendetta by investigator Frankie Sadler because of an extramarital affair and relationship Petitioner had with his wife. ... Petitioner was prejudiced by trial court's refusal to allow questioning into the affair and trial counsel's failure to proofer (sic) for appellate review testimony of the affair in that he was denied a fair trial because he was denied the right to present to his jury material evidence that

would have proved his innocence, and denied his right to preserve such evidence for review by the state appellate courts.

Ground six: It is Petitioner's claim that each affiant, Tracy Strickland for murder warrant, and Eddie Thompson for search warrant (for home), violated his Fourth and Fourteenth Amendment rights by the deliberate and intentional inclusion of false statements in their supporting affidavit, and false statements were necessary to establish probable cause.

Supporting facts: Petitioner was prejudiced by false statements where investigator Frankie Sadler fabricated incident report implicating Petitioner in similar crimes, was put into evidence during petitioner's state trial. Petitioner submits that these documents were allowed to be taken into the jury room during deliberation, thus, the jury had before it for consideration evidence of prior crimes, for which Petitioner was not on trial for and the Court had not rule on.

Ground seven: It is Petitioner's claim that he was denied his Sixth and Fourteenth Amendment right to relevant jury instruction, where trial counsel failed to accept trial court offer to charge trial jury on mere-presence.

Supporting facts: Petitioner submits that the mere-presence charge was a necessary part of his defense in that it explained the existence of his fingerprints at the scene of the crime. Petitioner had been at the victim's house in the past, but his presence there at some remote time in the past did not make him the perpetrator of the crime for which he was on trial. A careful tailored mere-presence charge would have focused the jury attention on this fact, not create an inconsistency. Petitioner submits that his defense was prejudiced when his trial jury was improperly instructed when asked to consider such inference, because they erroneously believed that mere-presence at the crime scene was sufficient to convict.

Ground eight: It is Petitioner's claim that he was denied his Sixth and Fourteenth Amendment right to an alibi defense when trial counsel failed to investigate and present at trial the testimony of two alibi witnesses whose testimony would have been relevant and material to Petitioner's defense.

Supporting facts: ...Petitioner submits that trial counsel's failure to investigate and to utilize available discovery material resulted in counsel's failure to conduct reasonable investigation or make reasonable decision that these important and material documents and facts were necessary for counsel to develop an adequate alibi defense. ...Petitioner submits that the absence of alibi witnesses undermined any confidence in the outcome of his state trial for murder, thus establishing prejudice which flows from trial counsel's ineffective assistance in failing to investigate Petitioner's alibi defense, failure to utilize relevant discovery material to develop alibi defense or to

present any alibi witnesses to corroborate Petitioner's testimony.

Ground nine:   It is Petitioner's claim that he was denied his Sixth and Fourteenth Amendment right to compulsory process for obtaining witnesses in his favor where trial counsel failed to investigate, interview and present at trial material witness James Whistine whose testimony would have been relevant and material to Petitioner's defense.

Supporting facts: ... This material witness testimony was crucial because it corroborated Petitioner's explanation as to how his fingerprints were left at the crime scene. Trial counsel knew that once Petitioner took the stand, the prosecutor on cross-examination would exploit Petitioner's lack of corroboration of his testimony, and would call reply witnesses to discredit Petitioner's testimony. Petitioner submits that his defense was prejudiced when trial counsel failed to investigate, interview and produce trial material witness James Whistine and denied Petitioner his right to present available impeachment testimony, after the state prosecutor entered into evidence photograph of crime scene and testimony of reply witnesses to establish that victim did not own the car Petitioner and the victim was working on when his fingerprints were left at the crime scene.

Ground ten:   It is Petitioner's claim that direct appeal counsel's failure to petition for certiorari to the United States Supreme Court for review of Petitioner's Fourth Amendment claim denied petitioner a full and fair review of his claim.

Supporting facts: Petitioner submits that appellate counsel's failure to comply with Rule 13 (2) of the Rules of the United States Supreme Court is undisputed. Petitioner's right to seek certiorari to the United States Supreme Court exist by virtue of Federal Statute, 18 U.S.C. § 3006(a)(c)(d)(6).... Petitioner submits that his case was prejudiced where appellate counsel's failure to seek certiorari review of Petitioner's Fourth Amendment claim to the United States Supreme Court denied him the right to have the highest state court denial of Petitioner's Fourth Amendment claim reviewed by the United States Supreme Court, and if not for appellate counsel's failure there's a reasonable probability that Petitioner's direct appeal would have been successful.

### Motions for Recusal and Mandamus

Asbury has filed two motions seeking the removal of the undersigned from this case. On November 6, 2009, he filed a "Petitioner Motion for Magistrate Judge Recusal." On February 17, 2010, he filed a "Petition for Writ of Mandamus" seeking the same remedy. Both motions relate to

a prior case Asbury filed pursuant to 42 U.S.C. § 1983, i.e. <u>Asbury v. Driskell</u>, C/A No. 3:08-2671-DCN-JRM. <u>Aloe Creme Laboratories, Inc. v. Francine Co.</u>, *supra*. The undersigned will address these motions under the standard established by 28 U.S.C. § 455. Asbury asserts that in his § 1983 case the undersigned, due to religious prejudice against him and in conspiracy with the defendants, improperly filed two Report and Recommendations ("R&R's") with notices giving different dates for the filing of objections, which caused him to file untimely objections, leading to the granting of defendant's motion for summary judgment.

Under section 455, a judge must recuse himself where the judge's impartiality "might reasonably be questioned," or where the judge has "a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(a) and (b). The inquiry is an objective one, focusing on whether an outside observer with knowledge of all of the circumstances might have some reasonable basis for questioning the judge's impartiality. *See* <u>United States v. Grinnell Corp.</u>, 384 U.S. 563, 583 (1966); <u>United States v. Morris</u>, 988 F.2d 1335, 1337 (4th Cir. 1993) (citing <u>Rice v. MacKenzie</u>, 581 F.2d 1114, 1116 (4th Cir. 1978)). When there is no reasonable basis for questioning the judge's impartiality, it is improper for a judge to recuse. <u>United States v. Glick</u>, 946 F.2d 335, 336-37 (4th Cir. 1991).

Absent extraordinary circumstances, the source of the appearance of impropriety must be non-judicial. <u>Grinnell</u>, 384 U.S. at 583; <u>Morris</u>, 988 F2.d at 1337 (citing <u>In re Beard</u>, 811 F.2d 818, 827 (4th Cir. 1987). In other words, "the nature of the judge's bias must be personal and not judicial." <u>People Helpers Found, Inc. v. City of Richmond</u>, 12 F.3d 1321, 1325 (4th Cir. 1993) (citing <u>Shaw v. Martin</u>, 733 F.2d 304, 308 (4th Cir. 1984).

Asbury fails to set forth any evidence of personal bias or prejudice on the part of the

undersigned. The docket from <u>Asbury v. Driskel</u>l shows that only one R&R was issued with a standard notice to *pro se* litigants with respect to the filing of objections to the R&R. The record further shows that the Court granted the defendant's motion for summary judgment and denied Asbury's motion to amend or correct the Court's order. The Court's decision was affirmed on appeal. A judge need not recuse himself because of "unsupported, irrational, or highly tenuous speculation." <u>United States v. De Temple</u>, 162 F.3d 279, 287 (4th Cir. 1998). Further, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." <u>Liteky v. United States</u>, 510 U.S. 540,

555 (1994). It is therefore recommended that the motions to resuce the undersigned be denied.

### Discussion

Since Asbury filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997); <u>Breard v. Pruett</u>, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and <u>Green v. French</u>, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). *See* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

A state-court decision will certainly be contrary to [the Supreme Court's]

clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.

\* \* \*

[A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

### A. AEDPA Statute of Limitations

Respondent asserts that the petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the AEDPA. The AEDPA became effective on April 24, 1996. The AEDPA substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions. Subsection (d) of the statute now reads:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created

12

by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

        (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

    (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the Petitioner's conviction becomes final, not at the end of collateral review. Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001). If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court. Harris, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme Court).

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate

review)." Taylor v. Lee, 196 F.3d 557, 561 (4th Cir. 1999). Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." Crawley v. Catoe, 258 F.3d at 399. A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "(A)n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted). "When a post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R. Civ. P. 6(a). Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

Habeas petitions filed pursuant to § 2254 are subject to the doctrine of equitable tolling. Holland v. Florida, __ U.S. __, 130 S.Ct. 2549 (2010). Equitable tolling applies only in "those rare instances where–due to circumstances external to the [Petitioner's] own conduct–it would be unconscionable to enforce the limitation against the [Petitioner]." Harris, 209 F.3d at 330. Under § 2244(d), the State bears the burden of asserting the statute of limitations. Petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the doctrine of equitable tolling. Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002). To benefit from the doctrine of equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way" preventing him from timely filing. Pace, 544

U.S. at 418. An attorney's mistake in calculating the filing date for a habeas petition relative to the AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling. Lawrence v. Florida, 549 U.S. 327, 336-337 (2007) ("Attorney miscalculation [of a deadline] is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."). *See also* Harris, 209 F.3d at 331.

After direct appeal the Remittitur was returned on December 4, 1997. Asbury's conviction became final ninety days later, on March 5, 1998, when the time for filing a petition for writ of certiorari in the United States Supreme Court ended. Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000). Asbury filed his first PCR on April 3, 1998. At that time 28 days of untolled time had lapsed. Giving Asbury full credit for the time his two PCRs were pending, including his Austin appeal, the statue of limitations began to run again with the return of the Remittitur on October 9, 2007. Therefore, Asbury had until September of 2008 to file his federal habeas petition. It was not filed until September of 2009.

Asbury concedes that his petition is untimely. Instead, he seeks to invoke the doctrine of equitable tolling. (Pet.Mem., 3-8). The undersigned concludes that Asbury has not shown that he is entitled to equitable tolling.

The Fourth Circuit has held that equitable tolling applies to the filing deadlines established by the AEDPA. Harris v. Hutchinson, *supra*. However, equitable tolling is limited to "those rare circumstances where - due to circumstances external to the party's own conduct - it would be unconscionable to enforce the limitation period and gross injustice would result. *Id.*, at 330. In Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003), the Fourth Circuit stated the standard for a habeas petitioner. A petitioner would "only [be] entitled to equitable tolling if he presents (1) extraordinary

circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time."

Asbury asserts that the statute of limitations should be tolled because he did not personally receive notice that his petition for writ of certiorari had been denied by the South Carolina Court of Appeals or that the Remittitur had been returned to the circuit court. As proof, Asbury presents a "Request to Staff Member" which shows that he received no mail between September 29 and October 29, 2007. Also attached to Asbury's memorandum are copies of correspondence he sent seeking the status of his case.

Asbury's PCR became final with the return of the Remittitur by the South Carolina Court of Appeals on October 9, 2007. The Remittitur clearly shows that a copy was sent to Asbury's attorney. Contrary to Asbury's argument, there is no requirement established by the South Carolina Rules of Civil Procedure that the South Carolina court's personally serve documents on litigants who are represented by counsel. The issue, therefore, is whether Asbury's counsel was negligent in not sending him a copy of the Remittitur. Assuming that counsel failed to send Asbury a copy of the Remittitur (or a copy of the order denying the Writ of Certiorari by the South Carolina Court of Appeals), attorney error does not amount to an extraordinary circumstance entitling a habeas petitioner to the benefit of the doctrine of equitable tolling. Smith v. Bodison, 2009 WL 2340648, *6 (D.S.C.) quoting Taliani v. Chrans, 189 F.3d 597 (7th Cir. 1999) and Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001). There is no constitutional right to effective assistance of counsel in state collateral proceedings. Wise v. Williams, 982 F.2d 142, 144 (4th Cir. 1992) and 28 U.S.C. § 2254(i).

The undersigned also concludes that Asbury was not diligent in seeking to determine whether

the appeal of his PCR had been concluded. Asbury has included a number of letters he wrote to counsel and the courts seeking to learn the status of his cases. However, most of this correspondence concerns his direct appeal and his first PCR. Letters to counsel on his <u>Austin</u> review are dated prior to the case being transferred to the Court of Appeals by the Supreme Court. It appears that Asbury was aware of the transfer because the last two letters attached to his memorandum are addressed to the Court of Appeals. The last letter to the Court of Appeals, dated December 10, 2007, references the response to the first letter. According to the last letter, the Court of Appeals informed Asbury in February of 2007 that his case was one of a number of cases that was pending. Seven months later, September of 2007, the petition for writ of certiorari was denied and the Remittitur was returned with a copy to counsel. Asbury waited twenty two months before making further inquiry. By the time Asbury wrote the December letter, his case had been closed for fourteen months.

Thus, the undersigned concludes that Asbury's failure to contact the Court of Appeals for almost two years does not indicate the diligence necessary to benefit from the doctrine of equitable tolling. *See* <u>Smith v. Bodison</u>, *supra*, at 7-8.

**B. Procedural Bar**

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

**1.    Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254,

which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
>> (A)  the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)(i)  there is either an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3)  A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.  *See* O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948.  In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. *See* SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue is by filing an application for post-conviction relief ("PCR"). See S.C. Code Ann. § 17-27-10 *et seq.* A PCR applicant is also required to state all of his grounds for relief in his application. *See*, S. C. Code Ann. § 17-27-90. A PCR applicant cannot assert claims on collateral attack which could have been raised on direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1975). Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. The South Carolina Supreme Court will only consider claims specifically addressed by the PCR court. If the PCR court fails to address a claim as is required by S.C.Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007). A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[3] Further, he may present only those claims which have been squarely

---

[3]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion

(continued...)

presented to the South Carolina appellate courts. "In order to avoid procedural default [of a claim], the substance of [the] claim must have been fairly presented in state court...that requires the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Joseph v. Angelone, 184 F.3d 320, 328 (4th Cir. 1999) (internal quotes and citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. *See* Rose v. Lundy, *supra*.

### 2.    Procedural Bypass[4]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely

---

[3](...continued)
below on procedural bypass.

[4]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, *supra*, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. *See* Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has

21

procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. <u>Matthews v. Evatt</u>, 105 F.3d 907 (4th Cir. 1997); <u>cert</u>. <u>denied</u>, 522 U.S. 833 (1997) citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n.1 (1991); <u>Teague v. Lane</u>, 489 U.S. 288, 297-98 (1989); and <u>George v. Angelone</u>, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.    Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. <u>Granberry v. Greer</u>, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. <u>Coleman v. Thompson</u>, 501 U.S. at 750 and <u>Gary v. Netherland</u>, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocence.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." <u>Strickler v. Greene</u>, 527 U.S. 263, 283 n. 24 (1999) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. <u>Murray v. Carrier</u>; <u>Clozza v. Murray</u>, 913 F.3d 1092 (4th Cir. 1990), *cert. denied*, 499 U.S. 913 (1991); and <u>Clanton v. Muncy</u>, 845 F.2d 1238 (4th Cir.), *cert*. *denied*, 485 U.S. 1000 (1988). Because a petitioner has no constitutional right to counsel

in connection with a PCR application and/or an appeal from the denial thereof, he cannot establish cause for procedural default of a claim by showing that PCR counsel was ineffective. Wise v. Williams, 982 F.2d 142, 145 (4th Cir. 1992) *cert. denied*, 508 U.S. 964 (1993). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), *cert. denied*, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocence" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocence. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocence as to his guilt, *Id.*, or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5. Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), *cert. denied*, 517 U.S. 1171 (1996).

The application of these principles to Asbury's claims is included in the below discussion.

23

### C. Fourth Amendment

Asbury asserts violations of his Fourth Amendment rights because the trial court denied his motion to suppress the evidence seized from his residence (Ground 1) and there were false statements contained in the search warrant (Ground 6).

Stone v. Powell, 428 U.S. 465, 482 (1976) precludes a federal court from granting habeas relief on an alleged Fourth Amendment violation if "the State has provided a full and fair litigation" of the claim. Shortly after Stone was decided the Fourth Circuit stated the appropriate framework for the District Courts to employ when considering a Fourth Amendment claim in a § 2254 petition:

> "[A] district court..., should, under Stone v. Powell, first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice.
>
> *         *         *
>
> Second,...when the district court has made the 'opportunity' inquiry, it need not inquire further into the merits of petitioner's case, when applying Stone v. Powell unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired."

Doleman v. Muncy, 579 F.2d 1258, 1265 (4th Cir. 1978). *See also* Mueller v. Angelone, 181 F.3d 557, 570 n. 8 (4th Cir. 1999).

While "Stone v. Powell, marked for most practical purpose, the end of federal court reconsideration of Fourth Amendment claims by way of habeas petitions where petitioner has the opportunity to litigate those claims in state court", Grimsley v. Dodson, 696 F.2d 303, 304 (4th Cir. 1982), claims of ineffective assistance of counsel in litigating those claims in state court may be raised and are cognizable in the § 2254 petition. Kimmelman v. Morrison, 477 U.S. 365, 382-383 (1986).

The record shows that Asbury fully litigated his Fourth Amendment claims in state court and

raised them on direct appeal. Therefore, he is precluded from arguing these claims in this Court.

**D. Admission of Evidence**

Asbury asserts a violation of rights by the admission of testimony regarding electrical cords, other than the one used to bind the victim, because it tended to cause the jury to speculate as to other crimes (Ground 2).

During an *in camera* hearing concerning the admission of items seized from Asbury's home, defense counsel objected to any mention at trial of other appliances whose electrical cords had been severed which were observed during the search as irrelevant and prejudicial. The motion was overruled. (App. 236-240). The issue was raised and rejected on direct appeal as a state law evidentiary error.

Because Asbury presented this claim to the state courts as a state evidentiary matter, and not as a constitutional claim, it is barred from review by this Court. *See* Anderson v. Harless, 459 U.S. 4 (1982) (federal constitutional claim must be explicitly raised in state proceeding to accomplish exhaustion). Generally, an error in interpretation of a state evidentiary standard does not give rise to a due process violation. Estelle v. McGuire, 502 U.S. 62 (1991). Absent "circumstances impugning fundamental fairness or infringing specific constitutional protections," admissibility of evidence does not present a federal question. Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960). *See also* Goedeke v. McBride, 2007 WL 2874970, *21 (S.D.W.Va.) (standard to be applied is whether the admission of the evidence so infected the trial that the resulting conviction violated due process). Even though Asbury casts his claim as a violation of due process, there is nothing in the record to support a conclusion that allowing testimony that other severed electrical cords were in the residence (they were not admitted into evidence) fundamentally altered the trial. Asbury has

presented no evidence on this point. He merely speculates that the jurors may have discussed that the other electrical cords were used in other crimes.

### E. Sufficiency of Evidence

Asbury asserts that the State presented insufficient evidence to sustain his conviction for murder and kidnapping. This claim was not raised on direct appeal, and it is procedurally barred for the same reasons as his claim of admission of evidence at trial which is discussed above. The undersigned notes that Asbury raised as error on direct appeal the trial court's refusal to grant a directed verdict under South Carolina procedure.

A habeas petitioner's claim that he was convicted on insufficient evidence is cognizable as a due process violation. Jackson v. Virginia, 443 U.S. 307 (1979), Schulp v. Delo, 513 U.S. 298 (1995). The due process clause is not violated if, viewing the evidence in the light most favorable to the State, and giving the prosecution the benefit of all reasonable inferences, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Evans-Smith v. Taylor, 19 F.3d 899, 905 (4th Cir. 1994). This court is required to review and evaluate all of the evidence presented at trial in assessing such a claim. Wright v. West, 505 U.S. 277 (1992). Completely circumstantial evidence may be adequate to support a conviction. Stamper v. Munice, 944 F.2d 170 (4th Cir. 1991).

The trial court granted Asbury's motion for directed verdict as to the burglary and armed robbery charges due to a lack of evidence to establish the elements of those crimes. However, counsel made no argument that the State had failed to establish the elements for murder and kidnapping. On those counts, counsel argued that the State had failed to prove that Asbury was at the scene of the crimes. (App. 350-358). Indeed, Asbury testified at trial and sought to establish an

alibi defense. (App. 418-419).

The issue of whether the State produced evidence to establish the elements of murder and kidnapping is apparently raised for the first time in the present petition. The South Carolina Supreme Court acknowledged that Asbury's convictions were based on circumstantial evidence. The evidence produced at trial shows, in the light most favorable to the State, that the victim died from asphyxiation, a shirt having been tied around his neck and pushed into his mouth. Expert testimony showed that the electrical cord used to bind the victim came from an electric blanket found at Asbury's residence. Further, Asbury's fingerprints were found on a light bulb from the victim's back porch. There was sufficient evidence that Asbury was the perpetrator.

### F. Continuance

In his present petition, Asbury asserts that the trial court's denial of his motion for continuance denied his right to due process (Ground 4). On direct appeal, Asbury argued that the denial was an abuse of the trial court's discretion under state procedure. This claim is procedurally barred for the same reasons discussed above.

Under state law, motions for a continuance are left to the sound discretion of the trial court. A defendant has no constitutional right to set the time at which he is willing to proceed to trial. Ungar v. Sarafite, 376 U.S. 575 (1964). The denial of a motion for continuance exceeds the discretion of the trial court only where it is based upon an "unreasoning and arbitrary insistence on expeditiousness in the face of a justifiable request for delay." Morris v. Slappy, 461 U.S. 1, 11-12 (1983). The defendant must show prejudice from the denial of a continuance to gain relief. United States v. Myers, 66 F.3d 1364 (4th Cir. 1995).

Asbury's first trial in August of 1993 ended in a mistrial. The second trial was held in

September of 1993. Counsel moved for a continuance so he could obtain a transcript of the first trial to use in cross-examination of the State's witnesses. The trial court denied the motion to continue, finding that the transcript may be helpful at the second trial, but it was not essential. The South Carolina Supreme Court held that there was no abuse of discretion, noting that there was no prejudice because the audiotapes from the first trial were available for use at the second trial.

### G. Religious Discrimination

In Grounds 4A and 4B of the present petition, Asbury asserts that he was discriminated against throughout the state court process due to his religion (Islam). In this regard he argues that his trial attorney "conspired with State officials to ensure [his conviction]. Further, Asbury contends that state officials delayed his direct appeal, PCR, and PCR appeal because of his religion. These issues were not raised in state court and are procedurally barred. Since there is nothing in the state court record supporting these claim, the undersigned declines to address them.

### H. Trial Error

Asbury asserts that his Sixth Amendment right to confront his accuser and to present his theory of the defense was denied when the trial court refused to allow his attorney to question one of the investigators about an affair he (Asbury) had with the investigator's wife (Ground 5). This issue was not raised on direct appeal. However, in his PCR Asbury asserted that his attorney was ineffective for failing to develop this theory and present it to the jury. The claim was rejected by the PCR court. (App. 661). The ineffective assistance of counsel issue was also raised in the PCR appeal. However, since Asbury only asserts this issue as an error by the trial court in his present petition, it is procedurally barred for the reasons set forth above.

Even if considered as an ineffective assistance of counsel claim, Asbury would not be entitled

to relief. Among the reasons the PCR court cited in rejecting the claim of ineffective assistance of counsel was trial counsel's strategic decision in failing to pursue the issue. (Ap. 661-662). Courts are reluctant to second guess an attorney's legitimate trial strategy decisions. Stamper v. Muncie, 944 F.2d 170 (4th Cir. 1991).

### I. Ineffective Assistance of Trial Counsel

Asbury asserts that his trial counsel was ineffective for failing to accept the trial court's offer to charge the jury on "mere presence" (Ground 7), for failing to investigate and present two alibi witnesses (Ground 8), and for failing to call James Whistine to corroborate his trial testimony (Ground 9).

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> \* \* \*
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the <u>wide</u> <u>range</u> of professionally competent assistance. (Emphasis added).

<u>Strickland</u> at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the <u>Strickland</u> test. *See* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

### (1) <u>Mere Presence (Ground 7)</u>

At the conclusion of the testimony, Asbury's trial attorney requested a jury instruction on alibi and that a defendant's mere presence at the scene was insufficient to sustain a conviction. The court noted that the request seemed inconsistent. After a break for lunch, counsel withdrew the request to charge mere presence. (App. 414-417). The PCR court found that the decision to withdraw the request for the mere presence instruction was a valid strategic decision because it was inconsistent with Asbury's alibi defense. (App. 862-863). This ground was raised and rejected in the

PCR appeal. Asbury has not shown that the state court's decision was contrary to, or an unreasonable application of, the Strickland test.

(2) Alibi (Ground 8)

Asbury asserts that his trial attorney was ineffective for failing to interview and call as witnesses two individuals who could corroborate his alibi, Edward "Tank" Connor and Hansel Robertson. He asserts that he told counsel about these witnesses months before trial. (*See* Memorandum attached to the Petition at p. 40). At trial, Asbury mentioned Robertson but not Connor. (App. 429). In his PCR, Asbury alleged that counsel was ineffective for not investigating and calling Connor. He did not mention Robertson. (App. 564-565). No evidence on the issue of ineffective assistance of counsel for failing to call Connor and Robertson at trial was offered during the PCR hearing. Neither Connor nor Robertson were called as witnesses. (App. 578-656). The issue was not addressed by the PCR court, and the court ruled that Asbury had waived issue by failing to present any evidence. (App. 658-665). Last, the issue was not raised in the petition for writ of certiorari following denial of the PCR.

The undersigned concludes that this claim is procedurally barred as Asbury failed to pursue it during the PCR process.

(3) James Whitstine (Ground 9)

Asbury asserts that counsel was ineffective for failing to call as a witness at trial his half-brother, James Whitstine, to corroborate a portion of his testimony. As discussed above, Asbury's fingerprint was found on a light bulb on the victim's back porch. At trial, Asbury testified that during Thanksgiving he visited Whitstine who lived adjacent to the victim. He noticed the victim working on a yellow automobile and spoke with him about purchasing it. Over several weeks,

he helped the victim attempt to start the vehicle, including running a battery charger to the vehicle from the socket on the victim's back porch. According to Asbury, Whitstine would have corroborated this testimony which accounted for the fingerprint on the light bulb. (App. 415-418). In reply testimony, the victim's daughter testified that the victim did not do mechanical work on automobiles and that he did not own a vehicle described by Asbury. (App. 471-479).

Whitstine was called as a witness at the PCR hearing. (App. 621-625). The PCR court summarized his testimony:

> Whitstine testified a car similar to the one described by Applicant existed at one time on the victim's property. However, Whitstine also testified he had no recollection of the applicant having interest in or working on the car. Further, Whitstine could not recall when the car had been present. (App. 664).

Based on this testimony, the PCR court concluded that, even if Whitstine's testimony was credible, Asbury could not show prejudice for failing to call him as a witness. The issue was included in the petition for writ of certiorari following denial of the PCR.

The undersigned concludes that the state court's finding in this matter was not contrary to, or an unreasonable application of, the <u>Strickland</u> test.

### J. Ineffective Assistance of Appellate Counsel

Asbury asserts that his appellate counsel was ineffective for failing to file a petition for writ of certiorari in the United States Supreme Court after his direct appeal was denied by the South Carolina Supreme Court (Ground 10). This ground was raised in the PCR application (App. 565-566), and rejected by the PCR court (App. 663). However, it was not raised in the petition for writ of certiorari following denial of the PCR. This claim is procedurally barred.

### <u>Conclusion</u>

Based on a review of the record it is recommended that Petitioner's motion for recusal and

motion for writ of mandamus be **denied**.  It is further recommended that Respondent's motion for summary judgment be **granted**.

_____
Joseph R. McCrorey
United States Magistrate Judge

July 26, 2010
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).