IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Willie James Asbury, #200788, ) | |
| ) | C/A No. 3:09-CV-2557-DCN-JRM |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | **ORDER & OPINION** |
| Robert M. Stevenson, III, Warden, ) | |
| Broad River Correctional Institution, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

This matter is before the court on a petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Respondent has moved for summary judgment, and petitioner has moved for recusal of the magistrate judge. The record includes Magistrate Judge Joseph R. McCrorey's report and recommendation entered pursuant to 28 U.S.C. § 636(b)(1), in which he recommends that the court grant respondent's motion for summary judgment and deny petitioner's motion for recusal. Petitioner has submitted written objections to that report and recommendation. For the reasons set forth below, the court adopts and affirms the magistrate judge's report and recommendation, grants respondent's motion for summary judgment, and denies petitioner's motion for recusal.[1]

## I. BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a state inmate in the custody of respondent and the South Carolina Department of Corrections. He is serving a life sentence for murder and kidnapping.

---

[1] Petitioner also filed a petition for writ of mandamus seeking the same relief as his motion to recuse the magistrate judge. The petition for mandamus relief is also denied.

1

Petitioner was indicted in York County in 1992 for murder, kidnapping, armed robbery, and burglary. His first trial in 1993 ended in a mistrial. Later in the same year, petitioner was convicted of the murder and kidnapping charges at his second trial. In his direct appeal, the Supreme Court of South Carolina summarized the facts of petitioner's crimes as follows:

> On January 1, 1992, Ezell Lawrence was found dead in his home. His feet were bound and his hands were tied behind his back with electrical cord. A shirt was tied around his neck and part of the shirt was forced into his mouth. The cause of death was asphyxiation. Asbury's fingerprints were found on the back-porch light bulb of Mr. Lawrence's residence. The bulb had been unscrewed sufficiently so that it was inoperable. The switch for the light was inside the residence. Asbury resided near Mr. Lawrence and often visited at a residence adjacent to Mr. Lawrence's property.
>
> On January 6, 1992, just after daybreak, deputy sheriffs of the York County Sheriff's Department went to Asbury's residence to serve him with commitment orders and arrest warrants unrelated to Mr. Lawrence's death. Numerous previous attempts to effect service of the warrants had been unsuccessful. In preparing for the arrest, the officers verified Asbury's address through driver's license records, the postal carrier and neighbors. Additionally, they learned from neighbors that Asbury came home late at night and left early in the morning. Testimony reveals the officers, with the arrest warrants and commitments in their possession, knocked on the door of Asbury's residence, announced themselves as police officers and called Asbury's name. A light was seen inside, but no activity was noticed, and they received no response from within. The officers entered Asbury's residence through an open kitchen window.
>
> Asbury was not at home. However, in searching for him, the officers observed in plain view an electric blanket with a male plug but from which the electrical cord had been removed. The officers left the residence without removing any evidence. On January 8th the officers procured a search warrant, returned to Asbury's residence and seized the electric blanket. Another search warrant was secured on January 15th. Pursuant to this search warrant, numerous appliances from which electrical cords had been severed, partial electrical cords, and items which could be used to cut electrical cords, including several pairs of scissors, were seized from Asbury's residence.
>
> The State's expert witness testified the male plug on the electric blanket had

2

> at one time been attached to the female plug on the electrical cord found tied around the victim's ankles. He further testified the electrical cords which bound the victim's hands and ankles had been cut by a pair of scissors found in Asbury's home.

State v. Asbury, 493 S.E.2d 349, 350-51 (S.C. 1997). The supreme court affirmed petitioner's convictions, and the remittitur was issued on December 4, 1997.

Petitioner filed an application for post-conviction relief on April 3, 1998, and an evidentiary hearing was held on March 29, 1999. Petitioner was represented by counsel. The PCR court denied petitioner relief, issuing its order of dismissal on February 23, 2000.

Petitioner sought certiorari review of the PCR trial court's decision. On December 4, 2001, the Supreme Court of South Carolina dismissed the petition for writ of certiorari pursuant to state procedural rules because the petition and appendix were not served. Petitioner then filed a second application for PCR, alleging ineffective assistance of counsel for failing to perfect the appeal from his original PCR. The state consented to re-instituting petitioner's PCR appeal, and his PCR appeal was re-instituted on March 3, 2004. On August 22, 2006, the supreme court transferred the matter to the court of appeals. On September 20, 2007, the court appeals denied the petition for writ of certiorari. Petitioner did not seek further review from the supreme court. The remittitur was returned on October 9, 2007. This habeas petition followed and was received by the clerk on September 30, 2009, after petitioner placed it in the mail on September 29, 2009.

## II. STANDARD OF REVIEW

This court must conduct a de novo review of any portion or portions of the magistrate judge's report to which an objection is made, and may accept, reject, or

3

modify the recommendations contained therein. 28 U.S.C. § 636(b)(1). However, review by this court of findings or recommendations to which no party objects is not necessary. Thomas v. Arn, 474 U.S. 140, 150 (1985). A party's failure to object constitutes an acceptance of the magistrate judge's findings and recommendations. United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984) (adopting interpretation of 28 U.S.C. § 636 which conditions appeal from a district court's judgment on magistrate judge's recommendation on party's filing of objections with district court). A general objection which is not "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute" is inadequate to obtain district court review. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003) (citation omitted). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976).

Summary judgment is appropriate when, after considering the full evidentiary record, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, the burden for summary judgment may be discharged by "pointing out to the court that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof." Id. at 322. Evidence should be viewed in the light most favorable to

4

the nonmoving party and all inferences drawn in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, a mere "scintilla" of evidence will not preclude summary judgment. Id. at 252.

### III. PRO SE PETITIONS

Plaintiff is proceeding pro se in this case. Pro se petitions should be construed liberally by this court and are held to a less stringent standard than those drafted by attorneys. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), cert. denied, 439 U.S. 970 (1978). A federal district court is charged with liberally construing a petition filed by a pro se litigant to allow the development of a potentially meritorious case. See Hughes v. Rowe, 449 U.S. 5, 9 (1980). Liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. See Weller v. Dep't of Social Services, 901 F.2d 387, 390-91 (4th Cir. 1990).

### IV. DISCUSSION

**A. Recusal Motion**

Both of petitioner's filings seeking recusal of the magistrate judge relate to a prior case filed by petitioner. See Asbury v. Driskell, C/A No. 3:08-2671-DCN-JRM. Petitioner asserts that in his previous section 1983 action the magistrate judge, because of religious animus against petitioner and in concert with the defendants, improperly filed two report and recommendations that ultimately caused petitioner to miss the filing deadline for objections, resulting in summary judgment being granted for the defendants. Thus, petitioner apparently believes that the magistrate judge is biased against him and

should be removed from the present case.

The standard for deciding recusal motions is established by 28 U.S.C. § 455. Section 455(a) mandates that a district judge "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(b)(1) requires disqualification "[w]here [the judge] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

Under section 455(a), "'[d]isqualification is required if a reasonable factual basis exists for doubting the judge's impartiality. The inquiry is whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial.'" United States v. Cherry, 330 F.3d 658, 665 (4th Cir. 2003) (quoting In re Beard, 811 F.2d 818, 827 (4th Cir. 1987)). However, "'unsupported, irrational or highly tenuous speculation'" will not require recusal. Id. (quoting United States v. DeTemple, 162 F.3d 279, 287 (4th Cir. 1998)). And, "'judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.'" United States v. Lentz, 524 F.3d 501, 530 (4th Cir. 2008) (quoting Liteky v. United States, 510 U.S. 540, 555 (1994)).

Under either prong of section 455, petitioner's recusal motion must fail. As an initial matter, the docket from petitioner's previous section 1983 case does not show the duplicate report and recommendations of which he complains. Moreover, petitioner has pointed to nothing in the record or elsewhere that raises even the appearance of impartiality, much less actual bias or prejudice. This is because there is none to be

found. At base, petitioner takes issue with the magistrate judge's prior judicial rulings. Petitioner's disagreement with these prior rulings is not a valid basis for his recusal motion; therefore, his motion, as well as his petition for a writ of mandamus seeking the same relief, is denied.

## B. Antiterrorism and Effective Death Penalty Act and Time Limit

Under 28 U.S.C. § 2254(a), the court has jurisdiction to hear a petition for a writ of habeas corpus made on behalf of a person in custody pursuant to the judgment of a state court. That jurisdiction may be exercised only for the purpose of determining whether that person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court's power to grant habeas relief is limited by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1213, as codified at 28 U.S.C. § 2254(d). Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" means "the holdings, as opposed to the dicta, of the [Supreme Court's] decisions as of the time of the relevant state-court decision."

Williams v. Taylor, 529 U.S. 362, 412 (2000); see Frazer v. South Carolina, 430 F.3d 696, 703 (4th Cir. 2005).

A state court's decision is contrary to clearly established federal law if: (1) the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court confronted facts that are materially indistinguishable from a relevant Supreme Court precedent and arrived at an opposite result. Williams, 529 U.S. at 405. A state court's decision involves an unreasonable application of clearly established federal law if: (1) the state court identified the correct governing legal rule but unreasonably applied it to the facts of the particular state prisoner's case; or (2) the state court either unreasonably extended a legal principle to a new context where it should not apply or unreasonably refused to extend that principle to a new context where it should apply. Id. at 407. An application of federal law is not "unreasonable" simply because a federal court concludes, using its independent judgment, that the state court erred. Id. at 410-11. "'[A]n unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of law is not, in all instances, objectively unreasonable." Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (quoting Williams, 529 U.S. at 410).

AEDPA requires deference to the state court's factual findings. Under section 2254(d)(2), habeas relief can be granted only when the state court based its decision on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under section 2254(e)(1), the state court's factual findings are afforded a presumption of correctness, which the petitioner can rebut only by clear and

8

convincing evidence. The Fourth Circuit has discussed the interplay of section 2254(d)(2) with section 2254(e)(1), holding that a district court must apply the presumption of correctness when reviewing factual findings for unreasonableness. See Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006); see also Baum v. Rushton, 2007 WL 2903923, at *4 n.1 (D.S.C. 2007) (noting that, although courts in other circuits have held that the two provisions should be applied separately, "Fourth Circuit and Supreme Court precedent indicate that the two provisions are interrelated").

"Under the well-established doctrine of procedural default, a federal habeas court may not review a claim that a state court has found to be clearly and expressly defaulted under an independent and adequate state procedural rule. . . ." Weeks v. Angelone, 176 F.3d 249, 269 (4th Cir. 1999); see Whitley v. Bair, 802 F.2d 1487, 1500 (4th Cir. 1986) ("[F]ailure to appeal claims disposed of by a state habeas trial court constitutes a procedural bar to further federal review of such claims."). Procedural default may be excused, however, if petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). The Fourth Circuit has held, however, that a petitioner for federal habeas cannot show "cause" and "prejudice" to excuse a procedural default by alleging ineffective assistance of counsel because there is no constitutional right to effective assistance of counsel in state post-conviction proceedings. Mackall v. Angelone, 131 F.3d 442, 449 (4th Cir. 1997).

In addition to the procedures for reviewing habeas petitions described above,

AEDPA also established a one-year statute of limitations for filing such petitions. The relevant part of the statute provides,

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.
>
> . . .
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). The one-year statute of limitations begins to run on the date the petitioner's conviction becomes final, not at the end of collateral review. Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within ten days of conviction. Rule 203(b)(2), SCACR. Thus, if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001). If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final ninety days after the final ruling of the Supreme Court of South Carolina. Harris, 209 F.3d at 328, n.1 (conviction becomes final on the expiration of the ninety-day period to seek review by the Supreme Court of the United States).

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of

limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the Supreme Court of the United States, nor the time a petition for certiorari is considered by the Supreme Court, is tolled. Crawley, 257 F.3d at 399.

Habeas petitions filed pursuant to section 2254 are subject to the doctrine of equitable tolling. Holland v. Florida, __ U.S. __, 130 S. Ct. 2549 (2010). Equitable tolling applies only in "those rare instances where–due to circumstances external to the [petitioner's] own conduct–it would be unconscionable to enforce the limitation against the [petitioner] and gross injustice would result." Harris, 209 F.3d at 330. To benefit from the doctrine of equitable tolling, a petitioner must show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way" preventing him from timely filing. Holland, 130 S. Ct. at 2562 (citation omitted). In Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003), the Fourth Circuit stated the equitable tolling standard for a habeas petitioner. A petitioner would "only [be] entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." An attorney's mistake in calculating the filing date for a habeas petition relative to the AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable

tolling. Lawrence v. Florida, 549 U.S. 327, 336-337 (2007) ("Attorney miscalculation [of a deadline] is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."); but see Holland, 130 S. Ct. at 2564 (suggesting that serious instances of attorney misconduct could provide basis for equitable tolling).

After petitioner's direct appeal was decided, the remittitur was returned on December 4, 1997. Petitioner's conviction became final ninety days later, on March 5, 1998, when the time for filing a petition for writ of certiorari in the Supreme Court of the United States ended. Petitioner then filed his first PCR on April 3, 1998. At that time, twenty-eight days of un-tolled time had elapsed. Giving petitioner full credit for the time his two PCRs were pending, including the one re-instated after his appeal, the statue of limitations began to run again with the return of the remittitur on October 9, 2007. Therefore, petitioner had until September 2008 to file his federal habeas petition. It was not filed until September 2009.

Petitioner concedes that his petition is untimely. Instead, he seeks to invoke the doctrine of equitable tolling. Petitioner asserts that the statute of limitations should be tolled because he did not personally receive notice that his petition for writ of certiorari had been denied by the South Carolina Court of Appeals or that the remittitur had been returned to the circuit court. As proof, petitioner presents a "Request to Staff Member" which shows that he received no mail between September 29 and October 29, 2007. Also attached to petitioner's memorandum are copies of correspondence he sent seeking the status of his case.

Petitioner's PCR became final with the return of the remittitur by the South Carolina Court of Appeals on October 9, 2007. The remittitur clearly shows that a copy was sent to petitioner's attorney. Contrary to petitioner's argument, there is no requirement established by the South Carolina Rules of Civil Procedure that the South Carolina courts personally serve documents on litigants who are represented by counsel. The issues, therefore, are whether petitioner's counsel failed to send the appropriate documents to petitioner and, if so, whether such failure is the type of "extraordinary circumstances" that would meet the equitable tolling standard. Assuming that counsel failed to send petitioner a copy of the remittitur (or a copy of the order denying the writ of certiorari by the South Carolina Court of Appeals), attorney error of this type does not amount to an extraordinary circumstance entitling a habeas petitioner to the benefit of the doctrine of equitable tolling. Smith v. Bodison, 2009 WL 2340648, *6 (D.S.C. Jul. 29, 2009) (citing Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001); Taliani v. Chrans, 189 F.3d 597 (7th Cir. 1999)). Moreover, there is no constitutional right to effective assistance of counsel in state post-conviction proceedings. Wise v. Williams, 982 F.2d 142, 144 (4th Cir. 1992).

Petitioner also fails to qualify for equitable tolling because he was not diligent in seeking to determine whether the appeal of his PCR had been concluded. Petitioner has included a number of letters he wrote to counsel and the courts seeking to learn the status of his case. However, most of this correspondence concerns his direct appeal and his first PCR application. Letters to counsel on his re-instituted PCR appeal are dated prior to the case being transferred to the court of appeals by the Supreme Court of South

Carolina. It appears that petitioner was aware of the transfer because the last two letters attached to his memorandum are addressed to the court of appeals. The last letter to the court of appeals, dated December 10, 2008, refers to the response to the first letter. According to the last letter, the court of appeals informed petitioner in February 2007 that his case was one of a number of cases that was pending. Seven months later, in September 2007, the petition for writ of certiorari was denied and the remittitur was returned with a copy to counsel. Petitioner waited twenty-two months before making further inquiry. By the time petitioner wrote the December 2008 letter, his case had been closed for fourteen months. Thus, petitioner's failure to contact the court of appeals for almost two years does not indicate the diligence necessary to benefit from the doctrine of equitable tolling.

### C. Petitioner's Remaining Objections

In addition to the recommendation based on AEDPA's statute of limitations, the magistrate judge has recommended that this court grant defendants' motion for summary judgment because some of petitioner's claims are procedurally defaulted and those that are not fail on the merits. The court has carefully reviewed de novo the report and petitioner's objections, as well as the pleadings, briefs, supporting documents and applicable case law, and finds no error in the magistrate judge's report. This court adopts the report and affirms the magistrate judge's findings and conclusions.

## V. CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An applicant satisfies this standard by establishing that reasonable jurists would find that the district court's assessment of the constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001). Here, petitioner does not meet this standard because there is nothing debatable about the court's resolution of his habeas petition. Accordingly, the court denies a certificate of appealability.

## VI. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the magistrate judge's report and recommendation be **ADOPTED** and **AFFIRMED**, respondent's motion for summary judgment be **GRANTED**, and petitioner's motion for recusal and petition for mandamus relief be **DENIED**.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON
CHIEF UNITED STATES DISTRICT JUDGE**

**September 23, 2010
Charleston, South Carolina**